† SIMS & al. versus HOWARD & al.

Where the master sails a vessel on shares, but it does not appear that he had *control* over her, the owners may recover for her freight.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

ASSUMPSIT, to recover freight of ninety barrels of vinegar from Philadelphia to Bangor; but the bill of lading provided, that if the river is closed with ice, then the cargo is to be received at Frankfort, or as near as ice will permit.

. This freight was shipped on board schooner *Tomah* of which Thomas Parsons was master, and plaintiffs were owners.

The captain victualled and sailed the vessel, paying the owners one-half the gross earnings for the use of her. The owners were to pay one-half of pilotage and all extra expenses.

When the vessel arrived at Frankfort, the navigation beyond was impeded by ice, but the owners of a portion of the cargo took the vessel to Bangor on their own risk, where after discharging a portion of the barrels of vinegar, and the greater part of the other freight, the vessel was taken back to Frankfort to prevent being frozen in, and there the remainder of the cargo was discharged and notice given to the owners and freight demanded.

If the action was maintainable upon the evidence submitted, the cause was to stand for trial; otherwise a nonsuit to be entered.

*B. Bradbury*, for defendants.

*Pike*, for plaintiffs.

1. The master was not owner *pro hac vice*, on the evidence adduced. *Lyman* v. *Redman*, 23 Maine, 289; *Ship*

*Nath'l Hooper*, 3 Sum. 543. To be so, he must have absolute control of the vessel. *Taggard* v. *Loring*, 16 Mass. 336; *Emery* v. *Hersey*, 4 Greenl. 407; *Cutler* v. *Thurlo*, 20 Maine, 213; *Skolfield* v. *Potter*, Davies, 395; *Webb* v. *Pierce*, 1 Curtis, 104.

2. The owners must sue for the freight money unless the master is owner *pro hac vice.* The master cannot maintain such action. *Robinson* v. *Cushing*, 11 Maine, 480; *Barnard* v. *Wheeler*, 24 Maine, 415; *Ingersoll* v. *VanBokkelin*, 7 Cowen, 670.

The master has a lien on freight money only for necessary disbursements. *Drinkwater* v. *Sparton*, Ware, 149; *Newhall* v. *Dunlap*, 2 Shep. 180.

TENNEY, J. — The claim is for the freight of ninety barrels of vinegar, from Philadelphia to Bangor and Frankfort, by the plaintiffs, as owners of the vessel. The right to recover is denied, on the ground, that the master, having taken the vessel on shares, the action for freight can be sustained in his name alone.

It was proved, that the plaintiffs were the general owners of the vessel, at the time the vinegar was shipped and brought to Frankfort and Bangor. The master had taken her on shares, at the halves; he victualled and sailed the vessel, and paid the owners one-half of the gross earnings for the use of her, and the owners were to pay half pilotage, extra help, and all extra expenses. No direct evidence shows the master to have had control of the vessel, and from the proof on this point, it cannot be inferred. If he was to pay one-half of the gross earnings of the vessel to the owners, he was entitled, under the agreement, to receive the other half for his services and disbursements. This is substantially the same as the right to one-half of the gross earnings for his services and expenses in sailing the vessel; and confers no authority to control her. The master was still the servant of the owners, and his right to a part of the earnings of the vessel, was no more than a mode of com-

pensation agreed upon with them. In the case of *Emery* v. *Hersey*, 4 Greenl. 407, "it was proved, that the vessel was let to the master on shares, the master to victual, man and sail the vessel, and to receive one-half the freight money, and five dollars for each trip she might perform." This agreement is not substantially unlike the one now under consideration, so far as the control of the vessel is concerned, and it was held to give the master no control over her.

The master has a right to receive or collect the freight from third persons, yet he receives it as the agent, and for the benefit of the owner. *Ingersoll* v. *VanBokkelin*, 7 Cowen, 670. And having no lien thereon for his wages, has no right as against his owners, to receive it, but only as their servant; and the payment of the freight to the owners on their demand, will be a discharge against a claim by the master. Abbott on Shipping, p. 509, 5th Am. ed. by Perkins; *Atkinson* v. *Cotesworth*, 3 Barn. & Cress. 647. It follows from these principles, that an action for freight, against third persons in the name of the owners of the vessel, having possession and control thereof, may be maintained. *Robinson* v. *Cushing*, 2 Fairf. 480.

The owners and the master, in this case, have treated, in their settlement, the freight as belonging to the former, by the allowance of one half of the amount claimed, to the latter, and this certainly does not diminish their right to prevail against the defendant.

By the bill of lading, the vinegar was to be delivered at Bangor; but if the river should be closed with ice, then the cargo was to be received at Frankfort, or as near as the ice would permit. On the arrival at Frankfort, on the last of November, the master found the river full of ice, and he refused to proceed any further on the risk of the vessel and owners. But the owners of six thousand, six hundred and forty-six bushels of corn, agreed to bear all risks, if the vessel should proceed to Bangor, and obtained a steamboat to tow her up the river, the master protesting against the attempt to proceed, till the risk was assumed by the owners

Sims *v.* Howard.

of the corn, who undertook the whole management. A part of the corn was taken out, after arriving at Bangor, by the aid of forty men, beside the crew of the vessel, and a part of the vinegar. But they were obliged to return to Frankfort the same day with the vessel, with a portion of the corn and of the vinegar, by direction of the master of the steamboat, that they must leave Bangor immediately after discharging the part of the corn and vinegar left at Bangor, the master of the vessel not interfering, because she was not then at the risk of the owners.

The vessel was towed back by the steamboat. The river was full of drift ice, and two miles above Frankfort the vessel came into ice, which extended across the river, and the steamboat cut her way through it, in towing up to Bangor, and also in towing down to Frankfort. One of the defendants came to the wharf, where the vessel lay when she was at Bangor, and was informed, that he could have the vinegar as soon as it could be landed. The defendants were notified, that the vinegar not landed at Bangor was stored with Mr. Rich, who usually stored goods for the Bangor people, and request made of them to pay the freight. As much of the vinegar was discharged at Bangor as could be done, considering the state of the tide. The river continued closed, while the vessel was at Frankfort, and was the last vessel which left Bangor that year.

From the evidence before us, we are satisfied, that the contingency happened, which authorized the discharge of that portion of the vinegar, which was stored at Frankfort, at that place.                        *Action to stand for trial.*